UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Julie L.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

19-CV-1715-LJV
DECISION & ORDER

---

On December 27, 2019, the plaintiff, Julie L. ("Julie"), brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On May 29, 2020, Julie moved for judgment on the pleadings, Docket Item 5; on July 27, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7; and on August 17, 2020, Julie replied, Docket Item 8.

For the reasons stated below, this Court grants Julie's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Julie argues that the ALJ erred in three ways. Docket Item 5-1. First, she argues that the ALJ erred by failing to properly evaluate the opinion of Carla R. Kuhl, LMSW ("LMSW Kuhl"). *Id.* at 16-22. Second, she argues that because the ALJ impermissibly used his lay judgment to craft the RFC, it is not supported by substantial evidence. *Id.*

at 22-26.  And finally, she argues that the ALJ failed to properly assess her credibility.  *Id.* at 26-30.  This Court agrees that the ALJ erred and, because that error was to Julie's prejudice, remands the matter to the Commissioner.

## I. LMSW KUHL'S OPINION

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source."  20 C.F.R. § 404.1527(c).  That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  And before an ALJ may deny a claimant's application, he must "confront the evidence in [the claimant's] favor and explain why it was rejected."  *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

Licensed master social workers (LMSWs) are not considered "'acceptable medical sources' . . . whose medical opinions may be entitled to controlling weight."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).  They instead are deemed "other sources,"[3] whose opinions the ALJ is "free to discount . . . in favor of the objective findings of other medical doctors."  *Id.* at 108-09.  But the ALJ still must consider and

---

[3] When Julie filed her claim in August 2016, LMSWs were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment"; but "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, [they could] outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006).  Because LMSW Kuhl treated Julie for more than a year, an ALJ reasonably could find that her opinions deserve significant weight.

explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning," SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).

The Code of Federal Regulations ("the Code"), 20 C.F.R. § 404.1527(c), enumerates six factors that the ALJ should consider in giving weight to the opinion of an "other source":

> [1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ.

See Tolliver v. Astrue, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013) (citations omitted) (summarizing the factors from the Code). Using those factors to articulate the ALJ's reasoning is more than just a good idea. In Tolliver, for example, the court remanded when the ALJ failed to use those factors to explain why he assigned little weight to an "other source" opinion of a nurse practitioner who saw the patient more frequently than did the treating physician. See id.; cf. Guerra v. Saul, 778 F. App'x 75, 77 (2d Cir. 2019) (holding that remand is not mandated when, despite failing to address the factors, "the ALJ provide[s] sufficient 'good reasons' for the weight assigned").

Here, the ALJ found that Julie had the RFC

> to perform the full range of sedentary work as defined in 20 CFR 416.967(b) except: she frequently can push, pull, and reach bilaterally; she must avoid work environments with crowds and unprotected heights, machines with moving mechanical parts, and driving employer vehicles; she can understand, remember, and carry out simple instructions; she occasionally can interact appropriately with supervisors and coworkers but cannot interact appropriately with the public; she can make simple work related decisions; she can tolerate few changes in routine work settings;

> she will be off task 10% of the day due to alternating between setting and standing and/or attention or concertation lapses; and, she will miss work one time a month.

Docket Item 4 at 28.  In reaching that conclusion, he gave "little weight" to LMSW Kuhl's opinion.  *Id.* at 33.  Although the ALJ provided some explanation for discounting the opinion, part of that explanation[4] stated that "Ms. Kuhl had only a short treatment relationship with the claimant, of less than a month prior to issuing her opinion."  *Id.*  And that is factually incorrect: LMSW Kuhl issued her opinion on September 21, 2018, a year after first treating Julie on September 22, 2017, *id.* at 167, and after having seen her biweekly or weekly for that entire year,[5] *id.* at 863.

The ALJ's mistake was no small error: many of LMSW Kuhl's findings are at odds with the ALJ's RFC determination.  *See id.* at 863-67.  For example, LMSW Kuhl opined that Julie would consistently be absent from work more than four days per month.  *Id.* at 867.  She also found that Julie was "seriously limited" or "unable to meet competitive standards" for more than twenty tasks, including sustaining a routine, making simple work-related decisions, requesting assistance, and understanding and remembering very short and simple instructions.  *Id.* at 865-66.  And she noted that Julie had "no useful ability" to, among other things, deal with work stress or "complete a

---

[4] In reaching his decision, the ALJ also said that LMSW Kuhl's opinion is "extremely inconsistent with the objective medical record," that it "relies heavily on the subjective report of symptoms and limitations provided by [Julie]," and that her opinion is not supported by the totality of the evidence—"including Ms. Kuhl's own treatment notes."  Docket Item 4 at 33.

[5] From the dates on LMSW Kuhl's treatment records, it appears that she met with Julie two or three times per month from September 2017 until April 2018, *see* Docket Item 4 at 795-829; after that, she met with Julie about once a week, *see id.* at 819 ("Writer and client decided that after ECT client will increase visits with writer in individual sessions to every week . . ."); *see also id.* at 831-859.

5

normal workday and workweek without interruptions from psychologically based symptoms." *Id.* at 865.  If the ALJ had credited LMSW Kuhl's opinion, those limitations almost certainly would have precluded the employment that the ALJ found possible.[6]

The Commissioner argues that the ALJ reasonably relied on the opinions of "three State agency psychologists[7] who reviewed the evidence in the record."  Docket Item 7-1 at 6.  The Commissioner reasons that because these opinions are consistent with each other and with the opinion of Peter M. Bursten, Ph.D.—another consulting doctor who evaluated Julie once in 2016—the ALJ's error about the length of LMSW Kuhl's treatment relationship with Julie was harmless.  *Id.* at 8.  In other words, the Commissioner suggests that because three psychologists who never saw Julie agreed with one who saw her once, their opinions necessarily outweigh that of her treating mental health counselor.  This Court disagrees.

In evaluating "other source" opinions, the length of the treatment relationship often can be dispositive.  *See, e.g.*, *Tolliver*, 2013 WL 100087, at *3 (remanding because of, among other things, a mistake in the ALJ's opinion concerning the length of the treatment relationship between the plaintiff and an "other source" when such "highly relevant information . . . may warrant apportioning more weight to [the "other source" opinion] than [to the consultive opinion]" on which the ALJ "heavily relied").  And that is especially true in cases involving mental health treatment.  Indeed, the Second Circuit

---

[6] The vocational expert's testimony indicated that being off task for more than ten percent of the day or missing work twice a month "would preclude all work."  Docket Item 4 at 67.

[7] These three psychologists were Byron T. Pack, Psy.D.; Thomas Conger, Ph.D.; and S. Bhutwala, Ph.D.

has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," a "concern [that] is even more pronounced in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (first quoting *Selian*, 708 F.3d at 419); *see also id.* at 97 (explaining that because "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is [not disabled]" (second alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)).  For that reason alone, the opinions of four psychologists who saw Julie a grand total of one time do not necessarily outweigh the opinion of a counselor who saw her regularly for a year.

The Commissioner also argues that because the ALJ discounted LMSW Kuhl's opinion for reasons other than his erroneous statement about the length of the treatment relationship, he would have discounted her opinion regardless of his mistake. Docket Item 7-1 at 11-12.  Any error resulting from that mistake, the Commissioner reasons, is therefore harmless.  *Id.*  But that is at best unsupported conjecture that is impossible to know or verify.

What is more, the ALJ's other reasons for rejecting LMSW Kuhl's opinion were also deficient.  For example,  the ALJ stated, in conclusory fashion, that the opinion was "extremely inconsistent with the objective medical record" and that "intact memory, orientation, thought process, and attentiveness are inconsistent with the severity of [the] limitations" that LMSW Kuhl found.  See Docket Item 4 at 33.  But the ALJ did not

7

explain how those findings were inconsistent with LMSW Kuhl's limitations, and the inconsistency is not apparent to this Court.  For example, someone with an "intact memory" who is "orient[ed]" and who has acceptable "thought process[es]" and "attenti[on]" still might "miss work more than four times a month" due to other mental health issues;[8] in fact, the Court sees no connection between the unremarkable mental health findings that the ALJ recited and the very significant work limitations that the ALJ acknowledged were found by LMSW Kuhl.  *See id.*  So even if the ALJ had not erred about the length of Julie's treatment relationship with LMSW Kuhl, remand still would have been required.

In sum, there is a significant difference between a treatment relationship lasting less than a month and one with frequent visits for a year.  It is impossible to know whether an accurate understanding of the depth of LMSW Kuhl's familiarity with Julie would have changed the ALJ's mind and perhaps outweighed the consulting opinions in the record.  And that is especially true given that all four consulting doctors reviewed the record or examined Julie *before* she began treatment with LMSW Kuhl.  *See* Docket Item 4 at 465 (Dr. Bursten examined Julie October 4, 2016); 80 (Dr. Park reviewed the record on October 5, 2016); 98 (Dr. Conger reviewed the record on December 9, 2016);

---

[8] And the same is true with respect to many other mental health limitations that LMSW Kuhl found: intact memory, orientation, thought processes, and attention do not preclude such findings as unable to carry out detailed instructions; unable to use public transportation or interact appropriately with others; unable to make even simple work-related decisions; unable to ask simple questions or even to request assistance, etc. *Compare* Docket Item 4 at 33 (ALJ's recitation of unremarkable mental health findings), *with id.* at 865-66 (LMSW Kuhl's findings of severe mental health limitations).

and 115 (Dr. Bhutwala reviewed the record on January 13, 2017)).  The ALJ's error therefore requires remand.[9]

## II.   THE ALJ'S PHYSICAL RFC DETERMINATION

Although an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), he "cannot substitute his own lay opinion in place of established acceptable medical authorities or treating sources," *Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) (citing *Balsamo,* 142 F.3d at 81).  In other words, an ALJ is not a medical professional and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Dailey v. Astrue*, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010).  As a general rule, "where the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner "may not make the connection himself." *Perkins v. Berryhill*, 2018 WL 3372964, at * 3 (W.D.N.Y. July 11, 2018) (citing *Jermyn v. Colvin*, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed [the p]laintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.")).

---

[9] On remand, if the ALJ still limits the weight given to LMSW Kuhl's opinion, the ALJ should explain in detail how that opinion is inconsistent with the medical evidence and why the limitations in that opinion are not warranted.

"[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).  Only in limited circumstances, such as "when the medical evidence shows only minor physical impairments, [may] 'an ALJ permissibly . . . render a common[]sense judgment about functional capacity even without a physician's assessment.'" *Perkins*, 2018 WL 3372964, at *3 (citing *Wilson*, 2015 WL 1003933, at *21).

Here, the ALJ found that Julie had the physical RFC "to perform the full range of sedentary work as defined in 20 CFR 416.967(b) except: she frequently can push, pull, and reach bilaterally; she must avoid work environments with crowds and unprotected heights, machines with moving mechanical parts, and driving employer vehicles . . .." Docket Item 4 at 28.  He reached this conclusion despite the absence of any medical opinion evidence in the record regarding Julie's physical condition.  *Id.* at 30.  Instead, he explained that the RFC was "[b]ased on findings of underweight, degenerative disc disease with spinal canal stenosis and neural foraminal narrowing, shoulder pain, and decreased neck bending, with subjective complaints of exhaustion/lethargy."[10]  *Id.*  But there is no obvious connection between the physical findings and the RFC, and this is not a case "where the medical evidence shows relatively little physical impairment,"

---

[10] The ALJ's opinion also summarizes the medical evidence and notes that there was no evidence that Julie "had surgery or any aggressive treatment for her neck." Docket Item 4 at 30.  He also cites a May 2017 report in the record that Julie helped a friend move, "which is inconsistent with severe pain or physical limitations."  *Id.*  This reasoning—and the Commissioner's argument that the RFC is properly based on "other evidence, such as medical findings and activities of daily living," Docket Item 7-1 at 13— is unpersuasive.  The ALJ could not have properly weighed "other evidence" against a medical record he was not qualified to interpret using his lay opinion.

such that the ALJ could permissibly "render a common[]sense judgment about functional capacity even without a physician's assessment." *Skupien v. Colvin*, 2014 WL 3533425, at *4 (W.D.N.Y. July 16, 2014) (quotation omitted).

As the ALJ noted, Julie suffers from cervical disc disorder. Docket Item 4 at 30. Although most of the hearing was focused on her mental health symptoms and limitations, Julie also testified about her physical limitations when moving and lifting as well as exhaustion when standing. Docket Item 4 at 61-62. Her medical records document complaints of "several years of mild neck pain, sometimes extending into bilateral shoulders." *Id.* at 596. And Julie attended five physical therapy sessions before stopping after experiencing worsening pain in her neck and shoulders. *Id.* at 557.

Most relevant to this analysis, the medical record includes the results of a May 2017 MRI showing "multilevel degenerative changes of the cervical spine with large posterior disc protrusion at the C5-C6 level resulting in moderate spinal canal stenosis and severe left neural foraminal narrowing." *Id.* at 644-45. The MRI also showed "developing myelopathy" at that level and "large posterior and left neural foraminal disc protrusion at the C6-C7 level with mid spinal canal stenosis and severe left neural foraminal narrowing." *Id.* at 645. The record also includes a June 2017 report from a visit with Jason Davies, M.D., Ph.D., ("Dr. Davies"). *Id.* at 596-597. Dr. Davies diagnosed Julie with cervical disc disorder at the C5-C6 and C6-C7 levels with myelopathy. *Id.* at 597. He recommended surgery and warned that forgoing surgery could result in "paralysis or progressive weakness of [Julie's] arms and legs." *Id.* at 596-597.

Those are not minor impairments that the ALJ was qualified to assess based on commonsense judgments. *See Caraco v. Comm'r of Soc. Sec.*, 2020 WL 415939, at *4–5 (W.D.N.Y. Jan. 24, 2020) (rejecting the argument that the plaintiff's degenerative disc disease and chronic pain were minor impairments the ALJ was qualified to assess based on common sense). "[A]s a lay person, the ALJ simply was not in a position to know whether" Julie had the ability to perform certain activities that "would in fact preclude the disabling [limitations]." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

Because the ALJ improperly substituted his own lay opinion in formulating Julie's RFC, his decision is not supported by substantial evidence. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."); *Perkins*, 2018 WL 3372964, at *4 ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review."). And that is a second, independent reason why remand is required.

Along the same lines, the absence of any treating source opinion regarding Julie's physical impairments created a gap in the evidentiary record that the ALJ was obligated to fill. "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of*

*Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa*, 168 F.3d at 79 (quoting *Perez*, 77 F.3d at 47). And the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011).

The Social Security Administration's own regulations reflect this duty, stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d)(1). The regulations explain that "every reasonable effort" means that "we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence," and "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." *Id.* § 404.1512(d)(1)(i) (emphasis added).

In this case, as the ALJ acknowledged, "[t]here were no treating source opinions in the record[] related to physical impairments." Docket Item 4 at 30. And there were

several ways for the ALJ to fill the gap he acknowledged: "he could have requested addition information from the treating physician . . .; he could have obtained an SSA consultative examination; and/or he could have requested an opinion from a medical expert." *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (citation omitted). But the ALJ took none of those steps, and the unfilled gap requires remand. *See, e.g.*, *id.* (remanding where "the only two medical opinions in the record were Dr. Pataki's opinion, which reached no conclusion regarding Plaintiff's physical capabilities, and Dr. Mafi's opinion, which the ALJ properly found was not material to the relevant time period"); *Gipps v. Berryhill*, 2019 WL 1986518, at *6 (W.D.N.Y. May 6, 2019) (remanding because "[d]uring the relevant period under review, there is no opinion of record by a treating physician or other medical provider that plaintiff was able to work and/or was ready to return to work or was capable of doing light work with the limitations found by the ALJ").[11]

---

[11] The Court "will not reach the remaining issues raised by [Julie] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 7, is DENIED, and Julie's motion for judgment on the pleadings, Docket Item 5, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   March 8, 2021
         Buffalo, New York

*LJVilardo*

LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE